**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue
Suite 1558
Los Angeles, CA 90024
Telephone:  (310) 405-7190
E-mail:  jpafiti@pomlaw.com

**Attorneys for Plaintiff**
*- additional counsel on signature page –*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARKUS JEON, on behalf of himself and all others similarly situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>NIO INC., BIN "WILLIAM" LI, and LOUIS T. HSIEH a/k/a TUNG-JUNG HSIEH,<br><br>                              Defendants. | Case No.<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

        Plaintiff Markus Jeon ("Plaintiff"), by his attorneys, on behalf of himself and all others similarly situated, alleges the following based upon the investigation of Plaintiff's counsel, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge.  The investigation of counsel included, among other things, a review of NIO Inc.'s ("NIO" or the "Company") public filings with the United States ("U.S.") Securities and Exchange Commission ("SEC"), press releases issued by the Company, media, news and analyst reports about the Company, conference calls with Company executives and investors, and other publicly available data, including, but not limited to, publicly available trading data relating to the price and trading volume of NIO American Depository Shares ("ADSs").

CLASS ACTION COMPLAINT

I. NATURE OF THE ACTION AND OVERVIEW

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the ADSs of NIO between September 12, 2018 and March 5, 2019, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

2. Defendants are NIO, Bin "William" Li ("Li"), the Company's Chief Executive Officer ("CEO") and Chairman of the Board of Directors ("Chairman"), and Louis T. Hsieh a/k/a Tung-Jung Hsieh ("Hsieh"), the Company's Chief Financial Officer ("CFO") (collectively, the "Defendants").

3. NIO designs, manufactures and sells electric vehicles in the People's Republic of China ("PRC"), the U.S., Germany and the United Kingdom ("U.K."). The Company reportedly has been compared to Tesla Inc.

4. The Company launched its first volume manufactured electric vehicle, the seven-seater "ES8," in December 2017 and started delivering vehicles to customers in June 2018. The ES8 is an all-aluminum alloy body, premium electric SUV that NIO states offers exceptional performance, functionality and mobility lifestyle.

5. In September 2018, NIO became the first Chinese all-electric car company to debut on the New York Stock Exchange ("NYSE"). On September 11, 2018, NIO closed its initial public offering ("IPO") of 160 million ADSs at an offering price of $6.26 per ADS, raising over $1 billion. The Company estimated that it would receive net proceeds of approximately $955 million from the offering.

6. In December 2018, the Company launched a five-seater ES6, with delivery expected to begin in late March 2019, and a six-seater version of the ES8.

7. During the Class Period, Defendants represented that sales of NIO's ES8 were significantly growing, reaching 11,348 vehicles for the year ended December 31, 2018, and that the

Company experienced "solid ramp-up in production and delivery in 2018, which demonstrated our execution capabilities," and represented that demand for the ES8 and ES6 was strong.

8.      In the third quarter of 2018, the Company delivered 3,268 ES8s. In the fourth quarter of 2018, NIO delivered 7,980 ES8s, representing growth of over 144% in ES8 deliveries.

9.      However, unknown to investors, demand for NIO's vehicles was materially declining and the Company was experiencing material adverse trends that were negatively affecting the Company's sales and revenue.

10.     Defendants' representations through the Class Period caused NIO ADSs to trade at artificially inflated prices.

11.     On January 29, 2019, after the close of trading, the Company filed a report with the SEC on Form 6-K that contained "Management's Discussion and Analysis of Financial Condition and Results of Operations" that repeated the Company's sales through December 31, 2018 and disclosed a proposed offering of $650 million in convertible senior notes.

12.     Sell-side analysts took note of NIO's January 30, 2019 conference call to discuss the proposed issuance of $650 million in convertible notes, during which NIO's management reassured investors that demand was strong for the ES8 and ES6 and that any change in Chinese government subsidies would have not have a significant impact on NIO because premium car buyers are less price sensitive and that NIO management expects demand to be resilient. In other words, NIO represented that even if the Chinese government lowered or eliminated electric car subsidies, demand would remain strong for its vehicles.

13.     On January 30, 2019, NIO ADSs increased from a closing price of $6.94 per ADS on January 29, 2019, to close at $7.46 per ADS on January 30, 2019, an increase of $0.52 per ADS, or over 7%, on heavier than usual volume of over 28 million ADSs.

14.     On February 4, 2019, the Company disclosed the closing of the $650 million convertible senior notes offering.

15.     On February 24, 2019, a segment aired on *60 Minutes* concerning NIO.  Defendant Li represented that NIO exceeded its goal of delivering 10,000 cars in 2018 and was ramping up production.

16.     On February 25, 2019, the following trading day, NIO ADSs increased from a close on February 22, 2019 of $8.17 per ADS, to close at $9.00 per ADS on February 25, 2019, an increase of over 10% on heavy volume of over 52 million ADSs.

17.     Then, just nine days later, on March 5, 2019, after the close of the market, NIO disclosed its fourth quarter and full year ended December 31, 2018 financial results.  Defendants shocked investors when they disclosed that for January 2019, the Company delivered 1,805 ES8s, a decline of over 45% from December 2018, and for February 2019, the Company delivered 811 ES8s, a decline of over 55% from January 2019 deliveries.  Further, the Company stated that it expected between 3500 and 3800 ES8 sales for the quarter ending March 31, 2019—just 884-1184 sales in March 2019, representing a decline of over 52% over fourth quarter 2018 sales.

18.     Defendant Hsieh explained the reasons that NIO ES8 deliveries materially declined:

> [W]e expect a greater-than-anticipated sequential decline in deliveries in the first quarter of 2019, partially due to accelerated deliveries made in the end of last year in anticipation of EV subsidy reductions in China in 2019; number two, seasonal slowdown surrounding the January 1 and Chinese New Year holidays; number three, soft macroeconomic conditions in China, particularly in the auto sector. As a result we expect ES8 deliveries in the first quarter to total between 3,500 and 3,800 units.

19.     Hsieh further stated that the trends negatively affecting NIO sales that were experienced in the first quarter of 2019 would continue into the second quarter of 2019, indicating that the material decline in NIO's ES8 sales went beyond first quarter seasonality:  "[w]e expect deliveries in the second quarter of 2019 to reflect continued weakness as we await the result of the 2019 EV subsidy policy in China and improvement in the macroeconomic conditions."

20.     Further, Defendant Li disclosed that Defendants had been experiencing material manufacturing difficulties with the Company's "made-to-order" business model for at least six months:

> ES8 is our first product. And from manufacturing to delivery, in terms of the readiness of supply chain, quality and software, we need to improve a lot. And for the past six months, we've experienced a lot of challenges. And some days we need to manufacture at least 100 or 200 cars and we need to deliver that many cars every day, and this is a huge pressure for us. And I guess to say that we have to overcome that period of time, and I – we appreciate our team for this great contribution.

21.     On March 6, 2019, NIO's ADSs declined from a closing price on March 5, 2019 of $10.16 per ADS, to close at $8.01 per ADS, a decline of $2.15 per ADS, or over 21%, on heavy trading volume of over 73 million ADSs.  On March 7, 2019, NIO's ADSs declined an additional $0.92 per ADS, or over 11%, to close at $7.09 per ADS.

22.     According to *Bloomberg News*, "BofAML analyst Ming Hsun Lee lowered his rating on NIO to underperform from neutral, noting lower-than-expected sales growth for the ES8 and a 'rich valuation.'" *Bloomberg News* further reported that, according to one analyst:

> [W]hile NIO's fourth-quarter numbers were on the soft side, its demand concerns may actually prove more damaging for investors' long-term outlook on the company. NIO's fourth-quarter release pointed to February deliveries of just 811 units, Zhu said, adding that lower capacity utilization is expected to weigh on gross margins in the first quarter.

23.     The *Motley Fool* made the following observation concerning Defendants' disclosure:

> [I]nvestors may be more concerned about the company's outlook for the year ahead. CFO Louis T. Hsieh said that the company's deliveries would likely be weak, at least through the first half of the year, due to uncertainty around China's economy and the status of a government subsidy for buyers of electric vehicles.

24.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's ADSs, Plaintiff and other Class members have suffered significant losses and damages.

## II.     JURISDICTION AND VENUE

25.     The claims asserted arise under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.  Jurisdiction is conferred by Section 27 of the Exchange Act.  Venue is proper in this district throughout the Class Period and Defendants made materially false and misleading representations to investors that were disseminated to investors in this District.

26.     In connection with the facts and omissions alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.    PARTIES

27.     Plaintiff purchased NIO ADSs as detailed in the certification attached hereto and was damaged thereby.

28.     Defendant NIO is based in Shanghai in the PRC.  The Company's ADSs trade on the NYSE under the symbol "NIO."  The Company maintains its U.S. office in this District in San Jose, California.  The Company does business in the U.S. as NIO USA, Inc.

29.     As of July 31, 2018, the Company's San Jose, California office consisted of 546 employees, fifty-six of which were focused on vehicle engineering.  In San Francisco, California, the Company employed sixteen employees focused on user experience and interface.  The Company's San Jose and San Francisco offices purport to focus on innovation in the areas of:  autonomous systems, artificial intelligence, electric powertrain technology, digital systems, cloud architecture, digital cockpit security, user experience, user interface and vehicle engineering.

30.     Defendant Li was the Chairman and CEO of the Company at all relevant times.

31.     Defendant Hsieh was the Company's CFO at all relevant times.

32.     Defendants Li and Hsieh are referred to herein as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority

to control the contents of NIO's press releases, SEC filings and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's press releases and SEC filings alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations which were being made were then materially false and misleading.

## IV.   CLASS ACTION ALLEGATIONS

33.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class of all persons and entities who purchased the publicly traded ADSs of NIO during the Class Period.

34.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at the present time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of members of the Class located throughout the United States.  During the Class Period, at least 160 million NIO ADSs were issued and outstanding.

35.    Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have sustained damages because of Defendants' unlawful activities alleged herein. Plaintiff has retained counsel competent and experienced in class and securities litigation and intends to pursue this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff.  Plaintiff has no interests which are contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

## V.     FALSE AND MISLEADING STATEMENTS

36.     On September 11, 2018, NIO filed a Form F-1/A (the "Registration Statement") with the SEC. The Registration Statement stated that NIO is "developing our own manufacturing facility in Shanghai which we expect to be ready by the end of 2020."[1]

37.     NIO boasted in the Registration Statement that having its own manufacturing facility would allow NIO to "expand its manufacturing capability for the ET7 and future models" and "facilitate our ability to obtain our own [Electric Vehicle] manufacturing license."

38.     On November 11, 2018, NIO held a conference call with analysts to discuss its earnings release for the third quarter of 2018 (the "Q3 2018 Earnings Call").  On the Q3 2018 Earnings Call, Defendant Li assured investors that the anticipated reductions in government subsidies for electric cars would not have an impact on NIO's business, stating:  "Of course, the subsidy in the next year will decrease.  The government is – they were asking for opinions.  And we think this is not going to affect our gross margin that much because the sales price already includes the subsidy and this will not affect us that much."

39.     On January 10, 2019, the Company issued a press release on *Globe Newswire* titled "NIO Inc. Provides December 2018 Delivery Update."  The press release stated, in part, the following:

> As of December 31, 2018, aggregate deliveries of the Company's ES8, its 7-seater, high-performance premium electric SUV, reached 11,348 vehicles, 3,318 of which were delivered in December.

> "With 11,348 ES8 deliveries in 2018, we exceeded our delivery goal for our first calendar year as a public company," said William Li, founder, chairman and chief executive officer of NIO. "2018 has been a milestone year for us, as we produced and delivered over 11,000 ES8s and launched our second production car, the ES6, a 5-seater high-performance premium electric SUV on NIO Day in December 2018. We will continue to focus on market penetration by delivering high-quality products and holistic services to our users and to improve the system efficiency of our development and operations."

---

[1] Defendants Li and Hsieh signed the Registration Statement.

"We are pleased with the solid ramp-up in production and delivery in 2018, which demonstrated our execution capabilities," added Louis T. Hsieh, NIO's chief financial officer. "The delivery of 3,318 ES8s in December exceeded our expectation, which was in part due to accelerated deliveries made at the year end in anticipation of expected EV subsidy reductions in China in 2019. Despite an overall challenging automotive market and the seasonal low demand in the first quarter, we remain committed to expanding our sales network and strengthening our brand to support our future growth."

**NIO ES8 Delivery Volume**

| 2018 | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|
| Monthly Units of Delivery | 100[1] | 381 | 1,121 | 1,766 | 1,573 | 3,089 | 3,318 |
| Cumulative Units of Delivery | 100[1] | 481 | 1,602 | 3,368 | 4,941 | 8,030 | 11,348 |

40.    On January 29, 2019, the Company filed a report with the SEC on Form 6-K that contained "Management's Discussion and Analysis of Financial Condition and Results of Operations" that was included in the Company's offering memorandum dated January 29, 2019 in connection with a proposed offering of $650 million of convertible senior notes.

41.    The Company's Management's Discussion and Analysis of Financial Condition and Results of Operations stated, in part, the following:

We began making deliveries of the seven-seater ES8 to users on June 28, 2018, and we recorded revenues of RMB46.0 million (US$6.7 million) in June 2018 and RMB1,515.6 million (US$220.7 million) for the nine months ended September 30, 2018, which mainly consisted of revenues from the sales of our vehicles (including a number of embedded products and services offered together with the sale of vehicles), revenues from our services including charging solutions such as our energy package and one-off usage of our Power Express services, as well as revenues from monthly fees, excluding those fees for statutory and third-party liability insurance and car damage insurance paid directly to third-party insurers, under our service package.

42.    According to a UBS analyst report, on a conference call on January 30, 2019 to discuss the proposed issuance of $650 million in convertible notes, NIO management represented that demand for NIO vehicles was "resilient":

**NIO updated on its backlog**

CLASS ACTION COMPLAINT

9

During the conference call on Jan 30 for the proposed issuance of $650mn convertible notes, NIO's management gave investors updates on the latest backlog. The introduction model ES8 still sees 5k unfulfilled orders, while the upcoming ES6 has attracted 6k orders to date, with another ~17k prospective customers who has intended for test drives. We think the backlog number improved visibility for ES8 delivery volume in this quarter, and considering that ES6 will not launch until Jun 2019, the early order book colour may ease some concerns from investors, in our view . . . .

**Subsidy cut remains as overhang**

Management expected the new NEV subsidy policy to be announced after Chinese New Year holidays, and suggested that the current consensus is roughly 50% cut in subsidy per car. Management believes the change in subsidy scheme will have much less impact to NIO than to the mass market NEV makers, as premium car buyers are less price sensitive and he expects the demand to be resilient.

43.   On February 24, 2019, a segment aired on *60 Minutes* concerning NIO featuring Defendant Li.  The *60 Minutes* segment included the following discussion with Defendant Li:

*Narrator*: William Li thinks NIO will survive and points out his Company met its modest goal of delivering 10,000 cars last year. Why are the numbers so small at the moment? "There are always problems and delays when a company ramps up production of something new", Li told us. And NIO's car, he added, "are all made to order." We visited NIO's production line, where the made-to-order cars are assembled in a spotless, automated, high-tech factory, dominated by a core of whirring robots. And with China's massive manufacturing machine behind it, NIO may be able to scale up faster than its foreign competitors.

44.   The statements referenced in ¶¶ 36-43 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:

i.      NIO would not be building its own manufacturing plant and would instead continue to rely on JAC Auto to manufacture its vehicles;

ii.     reductions in government subsidies for electric cars would materially impact

CLASS ACTION COMPLAINT
10

NIO's sales;

   iii.  the Chinese government indicated  that it would start to reduce the subsidies in 2019;

   iv.  NIO ES8 deliveries were not growing, but, in fact, had materially declined;

   v.  the Company was experiencing material negative trends that would negatively impact NIO vehicle sales and revenues through at least the second quarter of 2019;

   vi.  the Company's "made-to-order" model of business had experienced material manufacturing difficulties for at least six months; and

   vii.  as a result, Defendants' statements about NIO's business, operations, and prospects were materially false and misleading at all relevant times.

45. Furthermore, Defendants' failure to disclose in NIO's Management's Discussion and Analysis of Financial Condition and Results of Operations that ES8 deliveries and related revenue had materially declined in January 2019 and that the negative trends affecting NIO sales and revenues would continue through the first quarter and into the second quarter of 2019 violated Regulation S-K Item 303(a)(3)(ii), which required disclosure by Defendants of "any known trends or uncertainties that have had or that the registrant reasonably expects will have a material . . . unfavorable impact on net sales or revenues or income from continuing operations."

## VI. THE TRUTH BEGINS TO EMERGE

46. As set forth above, on March 5, 2019, after the close of the market, Defendants shocked investors when they disclosed that for January 2019, the Company delivered 1,805 ES8s, a decline of over 45% from December 2018, and for February 2019, the Company delivered 811 ES8s, a decline of over 55% from January 2019 deliveries, and that the Company expected weakness in sales to continue through at least the second quarter of 2019.

47. On March 6, 2019, NIO's ADSs declined from a closing price on March 5, 2019 of $10.16

per ADS, to close at $8.01 per ADS, a decline of $2.15 per ADS, or over 21%, on heavy trading volume. On March 7, 2019, NIO ADSs declined an additional $0.92 per ADS, or over 11%, to close at $7.09 per ADS.

## VII.   ADDITIONAL SCIENTER ALLEGATIONS

48.   As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding NIO, their control over, and/or receipt and/or modification of NIO's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning NIO, participated in the fraudulent scheme alleged herein.

49.   Defendants knew, or with deliberate recklessness disregarded, the falsity and misleading nature of the information which they caused to be disseminated to the investing public.  The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

50.   Defendants had the motive and opportunity to perpetrate the fraudulent scheme and course of business described herein because the Individual Defendants were the most senior officers of NIO, issued statements and press releases on behalf of NIO and had the opportunity to commit the fraud alleged herein.  Defendants were motivated to conceal the fraud alleged herein in order to raise capital for the Company.  On February 4, 2019, the Company disclosed the closing of a $650 million convertible senior notes offering.

## VIII.   LOSS CAUSATION/ECONOMIC LOSS

51.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated NIO's ADS price and operated as a fraud or deceit on Class Period purchasers of NIO ADSs by misrepresenting the Company's operating condition and future business prospects.  Defendants achieved this by making positive statements about NIO's business and financial results while they knew, or disregarded with deliberate recklessness, the adverse facts alleged above.

52.     Later, however, when Defendants' prior misrepresentations were disclosed and became apparent to the market, the price of NIO's ADSs fell precipitously as the prior artificial inflation came out of NIO's ADS price.

53.     As a result of their purchases of NIO ADSs during the Class Period, Plaintiff and other members of the Class suffered economic loss, i.e., damages under the federal securities laws.

54.     As a direct result of the public revelations regarding the truth about the condition of NIO's business and the negative adverse factors that had been impacting NIO's business during the Class Period, the price of NIO's ADSs materially declined.  This drop removed the inflation from NIO's ADS price, causing real economic loss to investors who purchased NIO ADSs during the Class Period.

55.     The decline in NIO's ADS price at the end of the Class Period was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market.  The timing and magnitude of NIO's ADS price declines negate any inference that the loss suffered by Plaintiff and other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Defendants' fraudulent conduct.

## IX.   FRAUD-ON-THE-MARKET DOCTRINE

56.     At all relevant times, the market for NIO's ADSs was an efficient market for the following reasons, among others:

(a)     The Company's ADSs met the requirements for public listing and were listed and actively traded on the NYSE, a highly efficient market;

(b)     As a regulated issuer, the Company filed periodic public reports with the SEC and the Company was covered by analysts; and

(c)     The Company regularly issued press releases which were carried by national news wires.  Each of these releases was publicly available and entered the public marketplace.

57.     As a result, the market for the Company's publicly traded ADSs promptly digested current information with respect to NIO from all publicly available sources and reflected such information in the price of the Company's ADSs.  Under these circumstances, all purchasers of the Company's publicly traded ADSs during the Class Period suffered similar injury through their purchase of the publicly traded ADSs of NIO at artificially inflated prices and a presumption of reliance applies.

## X.    NO SAFE HARBOR

58.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint.  Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.

59.     To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

60.     Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of NIO who knew that those statements were false when made.

XI.   **RELIEF REQUESTED**

## COUNT I

### (Violations of Section 10(b) of the 1934 Act
### and Rule 10b-5 Against All Defendants)

61.   Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

62.   During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew, or deliberately recklessly disregarded, were materially false and misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

63.   Defendants violated Section 10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)   Employed devices, schemes and artifices to defraud;

(b)   Made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or

(c)   Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of NIO's publicly traded ADSs during the Class Period.

64.   Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for NIO's publicly traded ADSs.  Plaintiff and the Class would not have purchased NIO's ADSs at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

65.   As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the

other members of the Class suffered damages in connection with their purchases of NIO's ADSs during the Class Period.

## COUNT II

**(Violations of Section 20(a) of the 1934 Act
Against the Individual Defendants)**

66.     Plaintiff repeats and re-alleges each and every allegation contained above as if full set forth herein.

67.     The Individual Defendants each acted as a controlling person of NIO within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and ownership and contractual rights, participation in or awareness of the Company's operations or intimate knowledge of the statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading before or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

68.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

69.     As set forth above, NIO and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions each as a controlling person, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

As a direct and proximate result of NIO's and the Individual Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's ADSs during the Class Period.

**XII.   PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.     Declaring this action to be a proper class action;

B.     Awarding damages, including interest;

C.     Awarding reasonable costs, including attorneys' fees; and

D.     Such equitable/injunctive relief as the Court may deem proper.

**XIII.   JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: March 29, 2019                                Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue
Suite 1558
Los Angeles, CA 90024
Telephone: (310) 405-7190
E-mail: jpafiti@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        ahood@pomlaw.com
        jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email:  peretz@bgandg.com

*Attorneys for Plaintiff*

**Submission Date**

2019-03-13 11:38:27

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.   I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against NIO Inc. ("NIO" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire NIO securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired NIO securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in NIO securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

## Name

**Print Name**

Mark Jeon

## Acquisitions

**Configurable list (if none enter none)**

| Date Acquired | Number of Shares Acquired | Price per Share Acquired |
|---|---|---|
| Oct 17, 2018 | 1282 | 7.82 |

## Sales

## Documents & Message

**Upload your brokerage statements showing your individual purchase and sale orders.**



**Signature**



**Full Name**

Markus Jeon



**Nio Inc. (NIO)**                                                              **Jeon, Markus**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 10/17/2018 | Purchase | 1,282 | $7.8200 |